AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

| LODGED<br>CLERK, U.S. DISTRICT COURT<br>2/18/2025<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: ASI  DEPTUTY |  | FILED<br>CLERK, U.S. DISTRICT COURT<br>02/18/2025<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: IV  DEPUTY |

# UNITED STATES DISTRICT COURT
for the
Central District of California

United States of America

v.

Chantelle Lavergne Woods,

Defendant

Case No.  2:25-mj-00786-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about January 27, 2022, in the county of San Luis Obispo, in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §1546(a) | Fraud And Misuse Of Visas, Permits, And Other Documents |

This criminal complaint is based on these facts:

*Please see attached affidavit (and, in particular, paragraphs 24-25 thereof, for details in support of this charge).*

☒ Continued on the attached sheet.

/s/ Gabriel Perez
Complainant's signature

Gabriel Perez, Special Agent, DEA
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: February 18, 2025

*[signature: Patricia Donahue]*
Judge's signature

City and state: Los Angeles, California

Hon. Patricia Donahue, U.S. Magistrate Judge
Printed name and title

AUSA: Elia Herrera, (213) 894-2024

**AFFIDAVIT**

I, Gabriel Perez, being duly sworn, declare and state as follows:

### I.  PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a complaint against, and request for issuance of an arrest warrant for, Chantelle Lavergne Woods ("LAVERGNE"), for a violation of 18 U.S.C. sec. 1546(a), (fraud and misuse of visas, permits, and other documents).[1]

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, and all dates, times, and amounts are approximations.

### II. BACKGROUND OF AFFIANT

3. I am a Special Agent ("SA") with the Drug Enforcement Administration ("DEA") and have been so employed since July

---

[1] The elements of this offense are: (1) "the defendant [[forged] [counterfeited] [altered] [falsely made]] [[an immigrant] [a non-immigrant]] [[visa] [permit] [border crossing card] [alien registration receipt card] [other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States]]; and [(2)], the defendant acted knowingly.  *Ninth Circuit Model Jury Instr. 15.43 (2024 Ed.)*

1

2012.  I am currently assigned to the Ventura Resident Office in Camarillo, California.

  4. Upon joining the DEA, I attended and graduated from the sixteen-week DEA Basic Agent Training in Quantico, Virginia.  During the training, I received several hundred hours of comprehensive, formalized instruction on such matters as drug identification, detection, and interdiction, drug enforcement laws, surveillance techniques, informant handling, interviewing, report writing, money laundering techniques, and asset identification, seizure, and forfeiture.  I have also completed a field-training program under the direction of a senior agent and have spent numerous hours working with senior special agents conducting complex drug investigations.  Additionally, I have attended special training in wire and electronic interceptions and the use of wire and electronic equipment.

  5. During my employment with DEA, I have participated in drug investigations as both a case agent and in a supportive role.  I have assisted in the arrest of multiple drug traffickers as a result of these investigations.  I have witnessed and assisted other officers and agents interview informants and suspects concerning the methods and means of drug traffickers.  I have participated in several static and mobile surveillance activities across Southern California and have assisted in the execution of multiple search warrants.

  6. Through these investigations, my training and experience, and conversations with other agents and law enforcement personnel, both in the United States and elsewhere,

I have become familiar with the methods used by narcotics traffickers to smuggle and safeguard narcotics, to distribute narcotics, and to collect and launder proceeds related to the sales of narcotics.

7.  Additionally, I have received training and have gained first-hand knowledge on the diversion of controlled substance pharmaceuticals. I have attended intelligence meetings and received intelligence briefs on the prevalent abuse of prescription drugs in society today. I have also spoken with experienced DEA diversion investigators concerning the methods and practices of criminals who are engaged in the illegal trade of prescription medication.

8.  In my duties as a DEA SA, I also have been specially trained in the use of court-ordered interceptions of wire and electronic communications. I was also instructed in the use of wire and electronic communications interception as a tool to disrupt and dismantle drug trafficking organizations.

### III. SUMMARY OF PROBABLE CAUSE

9.  I have probable cause to believe that LAVERGNE controlled a business through which LAVERNGE, and others, illegally sold controlled substances and created fraudulent immigration documents.[2] This affidavit concerns the latter

---

[2] Other personnel with whom I have conducted this investigation obtained a search warrant for certain premises and the person of LAVERGNE associated with this investigation. The search was authorized by Hon. Jacqueline Chooljian on July 20, 2022. *See,* 2:22-MJ-2816, 2818-2820. The approved affidavit in support of the search of the premises referred to herein as the "Clinic" (2:22-MJ-2816) is attached hereto as Exhibit A and
*(footnote cont'd on next page)*

offense conduct.  Specifically, LAVERGNE fraudulently prepared hundreds of government-required forms, for a fee, by misusing physicians' credentials and indicating false compliance with medical examination requirements necessary for immigration applicants to register permanent residence or adjust their immigration status.

## IV. STATEMENT OF PROBABLE CAUSE

**Regulatory Framework**

10.   I reviewed information located on the United States Citizenship and Immigration Service ("USCIS") and Centers for Disease Control and Prevention ("CDC") websites pertaining to medical examination and vaccination requirements for individuals seeking to register permanent residence or adjust their immigration status.  I learned the following for the period covered by the offense conduct described in this affidavit, February 2021 through and including April 2024:

    a.   USCIS required submission of a Form I-693, Report of Medical Examination and Vaccination Record.  According to the CDC's "Technical Instructions for Civil Surgeons," the examination for which certification was provided on Form I-693 required:

        i.   a mental examination that included, at a minimum, assessment of intelligence, thought, cognition (comprehension), judgement, affect (and mood), and behavior; and

---

hereby incorporated herein, without exhibits, by this reference. I am familiar with the evidence described in that affidavit and believe the information provided in that affidavit to be accurate. Portions of that affidavit are summarized or restated herein as relevant to this affidavit.

ii. a physical examination that included, at a minimum, examination of the eyes, ears, nose and throat, extremities, heart, lungs, abdomen, lymph nodes, and skin. https://www.cdc.gov/immigrant-refugee-health/hcp/civil-surgeons/medical-history-physical-examination.html

b. USCIS was authorized to designate individual physicians as "civil surgeons" to perform the examinations described above. Such designation was made pursuant to USCIS's approval of information provided by a physician applicant on USCIS Form I-910, "Application for Civil Surgeon Designation." https://www.uscis.gov/sites/default/files/document/forms/i-910.pdf.

**Clinic Website**

11. Medical Weight Loss and Immigration Services" (the "Clinic") maintained a website that advertised medical weight loss and immigration physicals at the internet address of www.sugarmanweightloss.com. The website was maintained by Clever Concepts, a website designer in Templeton, California, operated by D.C. D.C. told investigators that Clever Concepts had maintained the Clinic's website since at least 2012 and that he communicated over the phone or through email with LAVERGNE regarding changes to and billing for hosting the website.

12. As of January 2022, the Clinic's website displayed "[R.G.], M.D. Board Certified Neurologist and Designated Civil Surgeon for USCIS."

13. According to the California Medical Board website, R.G. was not board-certified neurology; he was board-certified in pediatrics.

**Public and Bank Records Show that LAVERGNE Controlled the Clinic**

14. In January 2019, LAVERGNE filed a Fictitious Business Name Statement for the Clinic with the San Luis Obispo County Clerk's Office. LAVERGNE identified the Clinic's principal place of business as 1136 East Grand Avenue, Arroyo Grande, California 93420.

15. On May 12, 2021, LAVERGNE signed a "Merchant Processing Application & Agreement" with Spot On, a point-of-sale terminal provider, by which the Clinic arranged to accept payments from its customers. On that application, LAVERGNE described the Clinic as "Doing Business as MEDICAL OFFICE OF W/L and IMM services." (Based upon my familiarity with the evidence obtained in this investigation, I believe that "W/L" stood for "weight loss" and that "IMM" stood for "immigration.")

16. In order to process payments through Spot On, LAVERGNE identified an account at U.S. Bank, ending in 8874, in the name of Sierra Turf, Inc. According to California Secretary of State records, a "Statement of Information" for Sierra Turf, Inc. was filed that identified LAVERGNE as its "Chief Executive Officer, Secretary, Chief Financial Officer and Director."

17. Monthly statements from Spot On for the period of June 2021 to March 2022 show that the Clinic had 1,047 sales

transactions with resulting deposits of $287,563.98 into the U.S. Bank account ending in 8874.

18.   I reviewed a Wells Fargo Bank-provided signature card for a joint business account opened in March 2019 and saw that it was opened in the names of LAVERGNE and Dr. E.S.  The Wells Fargo account was titled, "MEDICAL WEIGHT LOSS AND IMMIGRATION SERVICES."  In November 2019, an individual, whose signature similarly matched that of several documents in LAVERGNE's name, signed a signature card to open an individual business account with Wells Fargo Bank that was also titled, "MEDICAL WEIGHT LOSS AND IMMIGRATION SERVICES."

**Clinic Advertisements**

19.   In May 2022 an undercover officer involved in this investigation received a text message from LAVERGNE to which was attached a flyer that stated, "*[o]ur fee is $300.00 to complete the I-693 physical which includes 2 visits with us *Laboratory cost is $150.00 which includes Syphilis, Gonorrhea, and TB QuantiFERON Gold Blood tests."  (Underlines and asterisks in original.)  The flyer's signature line included: "Dr. [R.G.], Designated Civil Surgeons for USCIS / Chantelle [LAVERGNE] Woods, Executive Assistant, Legal Secretary & Physician Supervisor 805.720.4079."  The flyer also included an email address (chantellemedical@aol.com), that I know, from reviewing multiple documents in this investigation, that LAVERGNE used, including one of multiple Forms I-693 that form, in part, the basis for this affidavit.  (See paragraphs 24 to 25, below.)

7

**Dr. R.G.'s Civil Surgeon Application**

20.  As of August 2022, the USCIS website listed three designated civil surgeons associated with "Sugarman Medical Services:" Drs. E.S., R.G., (as of April 2021), and R.F. (as of June 2022).  Dr. R.G. was officially approved by USCIS as a designated Civil Surgeon on April 22, 2021.  Dr. R.G.'s Civil Surgeon Application records provided by USCIS show that the application fee was paid with a check signed by LAVERGNE and drawn on the Clinic's Wells Fargo Account ending in 2663 and that, based on my review of a United Parcel Service label maintained by USCIS, the application and fee were mailed to the USCIS office by LAVERGNE.  After receiving the application, USCIS asked, twice, for additional information showing that Dr. R.G. had at least four years of experience as a practicing physician and was actively practicing at the clinic.  In response, the following additional documents were mailed from the clinic, which bore handwritten signatures that appeared to be in the name of Dr. E.S.: a letter dated March 4, 2021; a letter dated April 7, 2021; and a "Payroll Statement" dated April 7, 2021.  The April 7 letter stated, "I, [E.S.], M.D., am verifying employment for [R.G.], M.D. Dr. [R.G.], Ca License# [redacted], is actively practicing as a full scope family physician in my clinic since February 1, 2017."

21.  I reviewed the death certificate for Dr. E.S. that showed that Dr. E.S. died on February 6, 2021, before the dates of each of the letters, above, in which Dr. E.S. purportedly vouched for Dr. R.G.

8

**Interview of M.M.**

22.  In October 2021, DEA investigators from the Ventura Resident Office Tactical Diversion Squad were contacted by the San Luis Obispo Sheriff's Office concerning "a doctor's office that is possibly selling Alprazolam unethically."  Alprazolam is the generic name for Xanax and is a prescription-only, Schedule IV Controlled Substance used to treat anxiety disorders, panic disorders, and anxiety caused by depression.  Based on my communications with the San Luis Obispo Sheriff's Office, and other investigators whom I know were involved in this investigation, I learned the following:

       a.  In September 2021, a probation officer examined the contents of probationer M.M.'s purse and discovered a pill bottle containing 50 tablets of 2 mg alprazolam with a label indicating that it had been dispensed by "[R.G.], M.D."  The probation officer requested from M.M. a physician's note explaining the reason why M.M. was taking these medications.

       b.  On November 1, 2021, M.M. reported back to her probation officer that M.M. had visited the Clinic and obtained a note from LAVERGNE, dated September 27, 2021, which was a letter that included information for three different physicians: Drs. E.S. (name and medical license number on the letterhead and signature line), G.S. (medical license number on the letterhead), and R.G. (name on the letterhead and name and signature on the signature line).

       c.  The body of the letter stated: "[M.M.] is currently under my care and on a supervised weight loss program.

She is currently being prescribed 75mg of Diethylpropion daily and Alprazolam 2mg as needed for anxiety. She is being monitored and the medication is being dispensed in a weekly basis.".



d.   On November 1, 2021, M.M. was interviewed by San Luis Obispo County Sheriff's Detectives. During the interview, M.M. described the Clinic as "a pill mill." M.M. said, "I mean, how else would you describe it if you could just go in and purchase without seeing a – a – I mean, I'm just being honest." M.M. said that, when she stopped by the Clinic to obtain a doctor's note as requested by her probation officer in September 2021, LAVERGNE printed a "template" that already included Dr. R.G.'s signature.

10

**Interview of A.H.**

23. On October 21, 2021, K-9 Deputy Josh Peet performed a routine traffic stop of A.H. who stated that he had an appointment at the Clinic. A.H. stated in pertinent part:

    a. he was applying for a green card.

    b. the Clinic was very busy and that "they make money with filling out the form, getting the results from the examination and providing that to the government."

    c. he paid $450 to the clinic. I know from my review of evidence in this investigation, including LAVERGNE's flyer, referred to above, that this amount is consistent with how LAVERGNE charged for the completion of Forms I-693.

    d. he had located the USCIS designated civil surgeon on a federal website [referring to https://my.uscis.gov/findadoctor].

    e. there was no doctor at the Clinic.

**USCIS Data Showing I-693s Associated with the Clinic**

24. I obtained from USCIS and reviewed several Forms I-693 that appeared to have been completed by LAVERGNE at the Clinic and submitted to USCIS. On one such form, the individual on whose behalf the form was completed was identified by name as "M.C.C." LAVERGNE's name appeared in the section entitled "preparer's full name." The Clinic's address appeared in the section entitled "preparer's mailing address." LAVERGNE's mobile telephone number, that I have seen dozens of times from having reviewed multiple documents in this investigation, and her email address at the Clinic, that I know from reviewing

11

emails obtained in this investigation, appeared in the section "preparer's contact information." LAVERGNE's signature, that I recognized from reviewing multiple documents obtained in this case, appeared, along with the typed date of "01/27/2022," in the "preparer's certification" section that included the acknowledgment that "all of this information is complete, true, and correct." The I-693 for M.C.C. also contained what appeared to be the signature of R.G., dated "01/27/2022," which I recognized from other documents obtained in this case, under the "civil surgeon's certification" section that stated, among other things, "I performed an examination of the person identified [on the form as M.C.C.]." I learned, from an interview with R.G., that he never performed a physical examination in connection with the clinic's immigration business. *See infra* Para 31(e).

25. I reviewed an Excel spreadsheet provided by Mark Gearhart, a USCIS Fraud Detection and National Security (FDNS) Supervisory Immigration Officer with whom I am working on this investigation. Officer Gearhart described the spreadsheet as "an excel spreadsheet with all of the cases with a Form I-693s received from the Sugarman medical offices by the doctors identified in the [Clinic] criminal investigation." The spreadsheet identified 328 separate I-693 Forms. A few of the forms appeared to be for the same immigration applicant. 249 of the 328 records were purportedly authorized by Dr. R.G. Officer Gearhart told me that he reviewed the I-693 for M.C.C. (described above) and that spreadsheet shows that M.C.C.'s I-693

was received by USCIS for processing on or about January 31, 2022 (approximately four days after it was dated by LAVERGNE.)

**Undercover Purchases of Controlled Substances at the Clinic Linking Dr. R.G.'s Name to Forms I-693**

26. Law enforcement conducted undercover purchases of controlled substances at the Clinic. Based on my review of evidence obtained in connection with that operation, including a recorded activity, I learned the following:

   a. On December 8, 2021, the DEA Ventura Resident Office jointly with the San Luis Obispo County Sheriff's Office conducted an undercover buy of phentermine, a controlled substance, at the Clinic. A detective, in an undercover capacity, walked into the Clinic and was greeted by LAVERGNE. LAVERGNE told him, "Appetite suppressants. We have all of them. All the prescription appetite suppressants." The detective filled out paperwork, which the detective saw LAVERGNE review, after which LAVERGNE sold him phentermine. No one physically examined the detective (besides taking the detectives weight). The detective did not see any doctor at the clinic. While the detective was still at the clinic, he observed another patient picking up a medication refill and paying two hundred dollars with a plastic card to LAVERGNE. The detective paid two hundred dollars in cash to LAVERGNE. LAVERGNE then printed and attached a white label to a pill bottle containing phentermine and handed it to the detective. The label on the pill bottle displayed "[R.G.], M.D." LAVERGNE provided the detective with a paper receipt for cash and her business card. The business card

13

listed Chantelle Woods as a "supervisor" at the Medical Office of [R.G.], M.D.

      b.    On December 14, 2021, law enforcement officers conducted another controlled purchase of phentermine at the Clinic.  The same detective was greeted again by LAVERGNE. While the detective was waiting in the lobby, he observed LAVERGNE assisting three individuals sitting at her desk with immigration paperwork.  He saw LAVERGNE guide the three individuals on where to sign the form.  While the detective and the three individuals waited in the clinic's lobby, LAVERGNE disappeared in the back office with the immigration paperwork for approximately six minutes.  When LAVERGNE returned, she asked "does she [whom I understood from the recording to be the person on whose behalf LAVERGNE had completed a Form I-693] want me to go over it with her before I seal the envelope." The detective did not observe a doctor at the clinic and law enforcement performing surveillance did not see any of Dr. [R.G.'s] registered vehicles at the clinic during the operation.

      c.    The USCIS website provided that, after a Civil Surgeon completes the requisite examination, the examining physician was required to complete Form I-693 and seal the form in an envelope for the immigration patients to then submit to USCIS.

    **LAVERGNE's Misuse of Dr. E.S.'s Medical License**

  27.    Based on my review of the California Medical Board records for Dr. E.S., I am aware of the following:

a. Dr. E.S.'s Medical License expired on December 31, 2021. On January 31, 2022, LAVERGNE wrote and signed a check from the Clinic's Wells Fargo Account ending in 5069 for $908 to the Medical Board of California with the memo line: "LICENSE NO. [] [E.S.] MD." The check accompanied a Physician's and Surgeon's Renewal form which was completed and signed as Dr. E.S. and was dated January 31, 2022, almost one year after his death.

```
MEDICAL OFFICE OF W/L and IMM SERVICES              Wells Fargo Bank
        Chantelle LaVergne                           16-24/1220
        1136 E GRAND AVENUE
        ARROYO GRANDE, CA 93420
        (805)720-4079
                                                              01/31/2022

PAY TO THE
ORDER OF    Medical Board of California               $  **908.00

    Nine Hundred Eight and 00/100***************************************  DOLLARS

    Medical Board of California
    PO BOX 942520
    SACRAMENTO, CA 94258-0520
MEMO                                            Chantelle LaVergne
    LICENSE NO.    E        S       MD              AUTHORIZED SIGNATURE
```

b. On February 18, 2022, the Medical Board of California sent an email to chantellemedical@aol.com that included an additional form that needed to be completed by Dr. E.S. as soon as possible. On the same day, an email was sent from chantellemedical@aol.com to the Medical Board of California with the completed form that included Dr. [E.S.'s] signature. The email was signed as "Edward A. Smith, M.D. chantellemedical@aol.com 805.720.4079 cell." The Medical Board of California renewed Dr. Smith's Medical License NO. [] on February 18, 2022.

15

**LAVERGNE Described "No Touch" Physicals for I-693**

28. In May 2022, a DEA investigator recorded a call with LAVERGNE. The investigator was posing as "Lena" for the purported purpose of trying to obtain information for her elderly immigrant mother. LAVERGNE stated that she would send the Clinic's flyer to Lena, and did so. The flyer stated, among other things, that "WE ARE A DESIGNATED CIVIL SURGEON FOR USCIS and COMPLETE IMMIGRATION PHYSICALS FOR I-693 FORM."

29. On May 12, 2022, in response to a further inquiry by the undercover "Lena," LAVERGNE texted that "[t]he immigration physical is a no touch physical it's paperwork only." A few seconds later, LAVERGNE sent a follow-up message, "The only people who touch her is the girl at the lab when they take her blood."

30. On May 13, 2022, the undercover "Lena" spoke to LAVERGNE and, with regard to completing the I-693, LAVERGNE reiterated, "I told you it's paperwork only."

**Dr. R.G.'s Statement**

31. On July 22, 2022, investigators interviewed Dr. R.G. In a recorded interview, he stated the following in pertinent part:

    a. He was a neonatologist.

    b. He met LAVERGNE around March 2020 because they shared a personal trainer.

    c. He then volunteered at an "immigration office" which he then identified as the [Clinic] during the period of March 2021 to May 2022.

       d.    His role at the Clinic was to review vaccination records provided by immigration applicants' lawyers.

       e.    He never conducted a physical exam on any of the immigration applicants nor did he ever see any such individuals at the Clinic.

       f.    He never dispensed any controlled substances while associated with the Clinic and terminated his association with the Clinic when he learned that LAVERGNE was "getting into diet pills."

       g.    He did not recall seeing M.M.

## V. CONCLUSION

32.    For all of the reasons described above, there is probable cause that Chantelle LAVERGNE committed a violation of 18 U.S.C. sec. 1546(a).

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this _18___ day of February, 2025.

_____
HONORABLE PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT A

# (REDACTED)